**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| TED KNOX, Inmate #N92676, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MARVIN F. POWERS, TERRY | ) | CIVIL NO. 05-114-JPG |
| CALIPER, REBECCA FORNEAR, | ) | |
| JACKIE HAMILTON, LANA WATKINS, | ) | |
| TWYLA WALTON, CARROLL | ) | |
| GEORGE, and JANE SIMMONS, | ) | |
| | ) | |
| Defendants. | ) | |

<u>MEMORANDUM AND ORDER</u>

**GILBERT, District Judge:**

Plaintiff, an inmate in the Tamms Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff previously was granted leave to proceed *in forma pauperis*, and he has tendered his initial partial filing fee as ordered.

Plaintiff states that in January 2003, routine blood work indicated that Plaintiff had a high blood glucose level of 120. Defendant Dr. Marvin Powers diagnosed diabetes, but refused to monitor Plaintiff's blood sugar. In January and February 2003, Plaintiff made requests directly to Defendants Powers and Terry Caliper during their routine rounds to have his blood sugar monitored regularly and to receive treatment for his diabetes, but the requests were denied. Plaintiff also informed Powers and Caliper during these rounds that he was suffering from excessive thirst, frequent urination, abdominal discomfort, and nausea. Powers and Caliper told him that these were common symptoms of diabetes. In early March 2003, Plaintiff notified Defendant Jackie Hamilton in person that his symptoms had worsened. Hamilton refused to take any action and told Plaintiff

that she didn't care how much he pled for help, she was not going to give him medical care unless he "totally passed out." Plaintiff states that during that night he suffered from severe abdominal pain and began vomiting blood. Plaintiff asked Defendant Rebecca Fornear to be taken to the hospital because he felt like he was dying. Fornear refused to contact a physician at night, stating that Nurse Hamilton had already placed his name in the emergency sick call line for the next morning. At 9:50 the next morning, several other inmates called an unnamed zone lieutenant to get medical attention for Plaintiff because he was lying in his cell unresponsive. Plaintiff was taken to the nurses station where he collapsed. His blood sugar registered at 578. He was immediately transferred to the hospital; when he arrived his blood sugar was 898. He remained in the hospital for three days.

A chest x-ray taken at the hospital indicated that Plaintiff had low lung volumes. Dr. Alfonso David told Plaintiff that he feared his lungs would collapse if Plaintiff did not receive treatment after he left the hospital. Dr. David told Plaintiff that he would inform Powers and Caliper of the need for continued monitoring. Upon his return to Tamms, Plaintiff told Powers that he was having difficulty breathing and experiencing chest pain and he requested treatment. Powers told him he would review his chart. Between March 18 and 24, 2003, Plaintiff told Defendants Carroll George, Twyla Walton, and Jane Simmons that he was suffering from severe chest pains, shortness of breath, and right side numbness and that he was coughing up blood. He requested of all three that he be allowed to see a lung specialist. Each noted his complaints.

On March 27, Powers examined Plaintiff and although Plaintiff told him of his difficulty breathing and pain, Powers told Plaintiff he would not order treatment by a specialist and that he should not worry because many people have lived with only one lung. Dr. Powers ordered Robaxin for Plaintiff's pain. Between March 31 and May 5, Plaintiff continued to complain to Dr. Powers

- 2 -

and Terry Caliper of his chest pain, difficulty breathing, and coughing up blood.  Powers and Caliper still refused treatment by a specialist.  On May 5, 2003, Plaintiff complained to Defendant Lana Watkins of more severe chest pain.  Watkins checked plaintiff's lungs with a stethoscope and informed Plaintiff she could only hear "crackles."  Plaintiff requested immediate treatment, which Watkins refused, stating that Walton told her that Powers and Caliper were not going to send Plaintiff to an outside hospital or specialist.  Plaintiff requested that Watkins contact Powers and Caliper to tell them that she heard only "crackles" in his lungs.  She agreed to do so.  Shortly thereafter, however, Watkins went to Plaintiff's cell and told him she had decided not to bother Dr. Powers because he was already aware of Plaintiff's requests for treatment by a specialist.  Watkins refused to discuss the situation further and told Plaintiff that he never should have come to Tamms if he wanted special treatment because Tamms was "built to punish not hand out special treatment." On May 13 Plaintiff was examined by Dr. Powers who stated that there did appear to be an air-flow problem, but that he would not allow treatment by an outside specialist.  On May 16, Plaintiff was given a chest x-ray and shortly thereafter transferred to a hospital because his right lung had collapsed.  Plaintiff states that Defendants' failure to treat his conditions constituted deliberate indifference to his serious medical needs in violation of the Eighth and Fourteenth Amendments.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994).  This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition."  *Estelle,* 429 U.S. at 106.  *See also Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996),

*cert. denied,* 519 U.S. 897 (1996).

> A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements.  The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'"  *Farmer*, 511 U.S. at ----, 114 S.Ct. at 1977.  As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  *Id.*  The second requirement is a subjective one: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that the Court has defined as "deliberate indifference."  *Id;  see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'").

*Vance v. Peters,* 97 F.3d 987, 991-992 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997).  However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate;  it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm....  Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm.  The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.

Neglect of a prisoner's health becomes a violation of the Eighth Amendment only

> if the prison official named as defendant is deliberately indifferent to the prisoner's
> health--that is, only if he 'knows of and disregards an excessive risk to inmate health
> or safety.'

*Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir.), *cert. denied,* 516 U.S. 993 (1995); *see also Steele*,

82 F.3d at 179 (concluding there was insufficient evidence of doctor's knowledge of serious medical

risk or of his deliberate indifference to that risk; emphasizing that even malpractice is not enough

proof under *Farmer*); *Miller v. Neathery*, 52 F.3d 634, 638-39 (7th Cir. 1995) (applying *Farmer*

mandate in jury instruction).  However, a plaintiff inmate need not prove that a defendant intended

the harm that ultimately transpired or believed the harm would occur.  *Haley v. Gross*, 86 F.3d 630,

641 (7th Cir. 1996).  Based on these standards, Plaintiff's claims cannot be dismissed at this point

in the litigation.  *See* 28 U.S.C. § 1915A.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver

of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants ***POWERS,***

***CALIPER, FORNEAR, HAMILTON, WATKINS, WALTON, GEORGE, and SIMMONS***.  The

Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the

complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of

Civil Procedure, to serve process on Defendants ***POWERS, CALIPER, FORNEAR, HAMILTON,***

***WATKINS, WALTON, GEORGE, and SIMMONS*** in the manner specified by Rule 4(d)(2) of the

Federal Rules of Civil Procedure.  Process in this case shall consist of the complaint, applicable

forms 1A and 1B, and this Memorandum and Order.  For purposes of computing the passage of time

under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the

Marshal, as noted on the USM-285 form.

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received.  If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant.  Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required.  Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court.  He shall include with the original paper to be filed with the Clerk of

the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts.  This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**Dated:  August 25, 2005**

   **s/ J. Phil Gilbert**
   **U. S. District Judge**